UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THOMAS HUCK, SOUDARACK HUCK,
Individually and as parents and natural
guardians of T.H., a minor child,

        Plaintiffs,

v.                                           Case No.  8:07-cv-199-T-24MSS

LOUISVILLE LADDER, INC.,

        Defendant.
_____/

**O R D E R**

        This cause comes before the Court on Defendant, Louisville Ladder, Inc.'s Motion for

Summary Judgment.  (Doc. No. 28.)  Plaintiffs have filed their response in opposition.  (Doc.

No. 34.)

**I.**        **Factual Background**

        This case involves product liability claims that arose from Plaintiff Thomas Huck's

("Huck") use of a ladder that was manufactured by Defendant Louisville Ladder ("Louisville

Ladder") and purchased by Huck's employer, Gene Dunn Continuous Guttering, Inc. ("Gene

Dunn Guttering").  Plaintiffs contend that the ladder was defective in that the spreader bars were

not of sufficient strength and stiffness to maintain the stability of the ladder.

        From 1996 until the time of the subject accident, Huck worked as a gutter installer for

Gene Dunn Gutterning.  (Huck Depo. at 55-56.)  In his work, Huck regularly used a ladder of the

type at issue in the instant case.  (*Id*.)  On August 3, 2006, Huck was using the subject ladder to

install gutters on a home.  (*Id.* at 112.)  In order to adjust a piece of the gutter, Huck set up the

ladder next to the house, with all four feet of the ladder on the ground.  (*Id.* at 127.)  Huck then

proceeded to climb the ladder, and when Huck was on the third or fourth step from the top of the

ladder, Huck lost his balance, grabbed onto the gutter, and then let go and fell to the ground. (*Id.*

at 121-122.)  Huck's body did not impact the ladder during the fall or afterwards. (*Id.* at 131.)

As a result of the fall, Huck suffered serious and permanent injuries.

Plaintiffs, Thomas Huck and his wife Soudarack Huck, on behalf of themselves and their

son, Thomas Huck Jr., (jointly, "Plaintiffs") asserted five claims in this case.  Count I is a strict

liability claim on behalf of Thomas Huck, alleging that the ladder was sold in a defective

condition that was unreasonably dangerous.  Count II is a negligence claim on behalf of Thomas

Huck, alleging that the ladder was not reasonably fit for its intended use and not free from

hidden defects.  Count III is a breach of warranty claim on behalf of Thomas Huck, alleging that

Louisville Ladder breached the product's guarantee that the ladder could hold up to 250 pounds

without collapsing, so long as all four legs of the ladder were resting on a solid flat surface.

Counts IV and V are a loss of spousal consortium claim on behalf of Soudarack Huck, and a loss

of parental consortium on behalf of Thomas Huck, Jr., respectively.  Louisville Ladder filed the

instant motion for summary judgment on Counts I, II and III of Plaintiffs' complaint.

## II.      Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits, if any, show that the moving

party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The Court must draw all

inferences from the evidence in the light most favorable to the non-movant and resolve all

reasonable doubts in that party's favor.  See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir.

2006)(citation omitted).  The moving party bears the initial burden of showing the Court, by

reference to materials on file, that there are no genuine issues of material fact that should be

decided at trial. See id. (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. See id. (citation omitted).

**III.      Analysis**

In its motion, Louisville Ladder argues that it should be granted summary judgment on Huck's strict liability, negligence, and breach of warranty claims. As an initial matter, Louisville Ladder argues that Huck cannot maintain any products liability claim against it, whether founded on strict liability, negligence, breach of warranty, or a *Cassisi* inference, because Huck cannot show that the subject ladder was in the same condition at the time of the accident as when it left Louisville Ladder's control.

That Plaintiffs must be able to show, by a preponderance of the evidence, that the subject ladder was in the same condition at the time of the accident as when it left Louisville Ladder's control is true. "[N]o matter what theory Plaintiff's case is founded upon, Plaintiff bears the burden of proving . . . '(1) that a defect was present in the product; (2) that it caused the injuries complained of; and (3) that it existed at the time the retailer or supplier or manufacturer parted possession with the product.'" *Pulte Home Corp., Inc. v. Ply Gem Indus., Inc.*, 804 F.Supp. 1471, 1486 (M.D. Fla. 1992) (quoting *Cassisi v. Maytag Co.*, 396 So. 2d 1140, 1141 (Fla. 1st DCA 1981)). Stating the third element differently, Plaintiffs must prove that the subject ladder reached Huck without substantial change of condition. *See Humphreys v. Gen. Motors Corp.*, 839 F.Supp. 822, 827 (N.D. Fla. 1993) (citing *High v. Westinghouse Elec. Corp.*, 610 So. 2d 1259, 1262 (Fla. 1992)).

Louisville Ladder contends that Plaintiffs cannot produce any evidence that the subject

ladder Huck used on the date of the accident was in the same condition as when it left Louisville

Ladder's control.  Louisville Ladder argues that the evidence, in fact, shows just the

opposite—that the ladder Huck used on the date of the accident had substantially changed.  At

the time of the accident, the ladder was six years old.  (Grate Analysis Report at 8, Figure 12.)

Christopher Hessner, an employee of Gene Dunn Guttering, was the first employee to use the

subject ladder when it was new, and continued to use it for a period of approximately two years.

(Hessner Depo. at 19.)  Mr. Hessner stopped using the subject ladder because he began to feel

uncomfortable on it, in significant part because the spreader bars were bent or bowed.  (Id. at 20-

22, 43.)  Because of this discomfort with the subject ladder, Mr. Hessner put the subject ladder in

the yard at Gene Dunn Guttering and informed Gene Dunn (the owner of the company) that he

needed a new ladder and would no longer be using the subject ladder because he no longer felt

safe on it.  (Id. at 19, 35.)  Even though Mr. Hessner no longer wanted to use the subject ladder

due in part to the bent spreader bars, he did not tell Mr. Dunn that the ladder should be retired

from use.  (Id. at 35.)  The subject ladder apparently was never officially "retired" from use.

(Dunn Affidavit.)

  There is no evidence in this case refuting the bent condition of the spreader bars on the

subject ladder.  Plaintiffs argue that Huck's deposition testimony refutes it, because Huck stated

that he believes he would have noticed a bend as significant as the bend in the spreader bars on

the subject ladder, and would not have climbed a ladder.  (Huck Depo. at 147-148.)  However,

Huck goes on to testify that he does not know whether the spreader bars were bent at the time of

the accident.  (Id. at 149.)  Plaintiffs also rely on Mr. Dunn's affidavit to try to refute the bent

condition of the spreader bars on the subject ladder.  However, this Court previously struck

relevant portions of Mr. Dunn's affidavit based on Mr. Dunn's lack of personal knowledge of the

statements within his affidavit, such that the remaining portions do not refute Mr. Hessner's

deposition testimony.  (Doc. No. 44.)

Upon consideration of the evidence, the Court finds that Louisville Ladder has met its

burden of showing that there is no genuine issue of material fact as to whether the ladder was in

the same condition immediately before the accident as it was when it left Louisville Ladder's

control.  Plaintiffs have not come forward with specific facts to dispute the fact that the spreader

bars on the subject ladder were bent or bowed.  An absence of evidence is not enough to survive

a motion for summary judgment.  Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co., Ltd. v.*

*Zenith Radio Corp.*, 475 U.S. 574 (1986) ("When the moving party has carried its burden under

Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to

the material facts.").

The Court will address how this determination affects each of Plaintiffs' claims.

**A.      Strict Liability**

"[I]n strict liability, the product is defective if, when it left the manufacturer, it was in a

defective condition unreasonably dangerous to foreseeable users and bystanders."  *Pulte Home*

*Corp., Inc.,* 804 F.Supp. at 1487 (citing *West v. Caterpillar Tractor Co., Inc.*, 336 So. 2d 80, 87

(Fla. 1976)).  In the instant case, this Court has already determined that the subject ladder was

not in the same condition before the accident as it was when it left Louisville Ladder's control.

As such, the product herein "cannot, in fairness, be called the "manufacturer's" product."

*Humphreys*, 839 F.Supp. at 827.  Accordingly, it reasonably follows that there is no genuine

issue of material fact regarding whether the subject ladder was in a defective condition

unreasonably dangerous to foreseeable users and bystanders when it left Louisville Ladder, and

as such, this claim fails.

### B.        Negligence

"In negligence, the test for product defect is that a manufacturer has a duty to exercise

reasonable care so that its products will be reasonably safe for use in a foreseeable manner and

that he has breached that duty."  *Pulte Home Corp., Inc.*, 804 F.Supp. at 1486 (citing *Witt v.*

*Norfe, Inc.*, 725 F.2d 1277, 1278 (11th Cir. 1984)).  As this Court previously stated, the subject

ladder, because it was not in the same condition before the accident as it was when it left

Louisville Ladder's control, cannot reasonably be said to be Louisville Ladder's product.  As

with Plaintiffs' claim for strict liability, it reasonably follows here that there is no genuine issue

of material fact regarding whether the Louisville Ladder breached its duty to exercise reasonable

care to ensure its product was reasonably safe for use in a foreseeable manner, and as such, this

claim fails.

### C.        Breach of Warranty

In breach of implied warranty, the "product is defective if it is not reasonably fit for the

intended use or reasonably foreseeable use at the time it left the possession of the manufacturer."

*Pulte Home Corp., Inc.*, 804 F.Supp. at 1486 (citing *In the Matter of Use by the Trial Court of*

*the Standard Jury Instructions (Civil Cases)*, 435 So. 2d 782 (Fla. 1983)).  The Court again notes

that it has already determined that the subject ladder was not in the same condition before the

accident as it was when it left Louisville Ladder's control.  As such, is reasonably follows that

there is no genuine issue of material fact regarding whether the subject ladder was reasonably fit

for the intended use or reasonably foreseeable use at the time it left Louisville Ladder's

possession, and as such, this claim fails.[1]

---

[1]The Court also notes that under Florida law, a claim for breach of implied warranty
cannot be brought in the absence of privity between the user and the manufacturer.  *See Kramer*
*v. Piper Aircraft Corp.*, 520 So.2d 37 (Fla. 1988).  Plaintiffs do not refute Louisville Ladder's

### D.     *Cassisi* Inference

Plaintiffs attempt to overcome the weakness of their evidentiary proof regarding the

condition of the subject ladder by arguing that this Court should apply the *Cassisi* inference to

this case.  *Cassisi* established that, if a product malfunctions during normal operation, a legal

inference arises that the product was defective both at the time of the accident and at the time it

was within the manufacturer's control.  *See Cassisi v. Maytag Co.*, 396 So. 2d 1140, 1148 (Fla.

1st DCA 1981).  If the *Cassisi* inference applies to the instant case, Plaintiffs will have

established a prima facie case for jury consideration and summary judgment must be denied.  *See*

*id.*  Louisville Ladder argues that the *Cassisi* inference is inapplicable to the instant case.

The *Cassisi* court made it clear that there are only two essential predicate facts for the

inference to apply: (1) a malfunction (2) during normal operation.  *Id.* at 1151.  This Court has

found that the subject ladder was not in the same condition before the accident as it was when it

left Louisville Ladder's control, such that it can no longer be called Louisville Ladder's product.

This finding leads the Court to the conclusion that at the time of the accident, the subject ladder

was not being used in a normal manner, as it hardly seems normal to use a product whose

condition has so changed.  Therefore, this Court finds that the second predicate fact does not

exist in the instant case, and that Plaintiffs are not entitled to a *Cassisi* inference.

### E.     Loss of Consortium

Loss of consortium claims are derivative claims which cannot exist without a primary

cause of action.  *Horst v. Parker*, 2007 WL 4234616 at \*3 (M.D. Fla. November 29, 2007)

---

contention that there was no privity of contract between Thomas Huck, as the employee of the
purchaser, and Louisville Ladder.  The Court therefore considers this argument to be unopposed,
and would still be inclined to grant summary judgment on this claim in the absence of other
grounds.

(citing *Gates v. Foley*, 247 So. 2d 40, 45 (Fla. 1971)).  Because this Court has determined that Louisville Ladder is entitled to judgment as a matter of law on all of Plaintiffs' primary causes of action, it naturally follows that their loss of consortium claims also fail.[2]

## III.  Conclusion

The Court finds that Louisville Ladder has carried its burden of showing that the record reveals no genuine issue of material fact as to Huck's claims under strict liability, negligence, and breach of warranty.  Plaintiffs have failed to present any evidence showing that there is such genuine issue of material fact.  Accordingly, the Court finds that Louisville Ladder is entitled to judgment as a matter of law on Counts I, II, and III of Plaintiffs' complaint.  The Court also finds that Plaintiffs can no longer maintain their claims for loss of spousal consortium and loss of parental consortium.

Accordingly, it is ORDERED AND ADJUDGED that:

(1)  Defendant's Dispositive Motion for Summary Judgment (Doc. No. 28) is **GRANTED**; and

(2)  The Clerk is directed to enter judgment in favor of Defendant, close this case, and terminate any pending motions.

**DONE AND ORDERED** at Tampa, Florida, this 25th day of January, 2008.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

---

[2]The Court also notes that in Florida, "[c]hildren have no right of action for loss of parental consortium." *Florida Power & Light Co. v. Macias by Macias*, 507 So. 2d 1113, 1118 (Fla. 3d DCA 1987) (citing *Zorzos v. Rosen*, 467 So. 2d 305 (Fla. 1985)).